IN THE UNITED STATES DISTRICT COURT FOR THE

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| OSCAR A. CLIFTON,<br><br>　　　　Plaintiff,<br><br>　　v.<br><br>PHILLIP J. CLINE, District Attorney for the County of Tulare; EDMUND G. BROWN, JR., Attorney General for the State of California,<br><br>　　　　Defendants. | 1: 08-CV- 0193 AWI SMS<br><br>ORDER GRANTING MOTION TO DISMISS AND DISMISSING DEFENDANT BROWN WITH LEAVE TO AMEND<br><br>(Documents #23 & #31) |

　　　This civil rights action is brought by Plaintiff Oscar A. Clifton, and it stems from his denied request for post-conviction DNA testing. This court has jurisdiction over the action pursuant to 28 U.S.C. § 1331.

**BACKGROUND**

　　　On June 26, 2008, Plaintiff filed an amended complaint ("complaint"). The complaint names Phillip J. Cline, District Attorney for the County of Tulare ("Defendant D.A. Cline"), and Edmund G. Brown, Jr., Attorney General for the State of California ("Defendant A.G. Brown"), as Defendants. Plaintiff requests relief pursuant to 42 U.S.C. § 1983. Plaintiff contends he has the right to post-conviction DNA testing of evidence from Plaintiff's criminal case that is still in existence and an accounting of all remaining evidence.

　　　On October 14, 2008, Defendant A.G. Brown filed a motion to dismiss. Defendant A.G. Brown contends that he is entitled to dismissal because he is only named in the complaint in his

position as the District Attorney of Tulare County's supervisor.   Defendant A.G. Brown argues that he cannot be held liable under a theory of *respondeat superior* or another vicarious liability theory.

On November 11, 2008, Plaintiff filed an opposition.   Plaintiff contends that even if Defendant A.G. Brown did not directly participate in the deprivations of Plaintiff's rights, he knew of the violations and failed to prevent them.   Plaintiff contends that a Deputy Attorney General filed an opposition to Plaintiff's petitions for DNA testing in the California courts and made incorrect representations to the court.   Plaintiff also points out that pursuant to California Penal Code § 1405 Defendant A.G. Brown has a direct role in overseeing tests that are conducted.

On November 21, 2008, Defendant A.G. Brown filed an reply.   Defendant A.G. Brown contends that he has no causal connection to Plaintiff's purported injury.

## LEGAL STANDARD

A complaint may be dismissed under Rule 12(b)(6) of the Federal Rules of Civil Procedure for "failure to state a claim upon which relief can be granted".   Fed.R.Civ.Pro. 12(b)(6).   A Rule 12(b)(6) dismissal can be based on the failure to allege a cognizable legal theory or the failure to allege sufficient facts under a cognizable legal theory.  Balistreri v. Pacifica Police Dep't, 901 F.2d 696, 699 (9th Cir. 1990); Robertson v. Dean Witter Reynolds, Inc., 749 F.2d 530, 533-34 (9th Cir.1984).   In considering a motion to dismiss, the court must accept as true the allegations of the complaint in question, construe the pleading in the light most favorable to the party opposing the motion, and resolve all doubts in the pleader's favor. Hospital Bldg. Co. v. Rex Hospital Trustees, 425 U.S. 738, 740 (1976); Jenkins v. McKeithen, 395 U.S. 411, 421 (1969); Broam v. Bogan, 320 F.3d 1023, 1028 (9th Cir. 2003).

For a complaint to avoid dismissal pursuant to Rule 12(b)(6), the complaint need not contain detailed factual allegations; rather, it must plead "enough facts to state a claim to relief that is plausible on its face."  Bell Atlantic Corp. v. Twombly, – U.S. – , 127 S.Ct. 1955, 1974

(2007); Weber v. Department of Veterans Affairs, 512 F.3d 1178, 1181 (9th Cir. 2008).  The complaint's factual allegations "must be enough to raise a right to relief above the speculative level."  Twombly, 127 S.Ct. at 1964-65.  Federal Rule of Civil Procedure 8(a)(2) requires a "showing" that the plaintiff is entitled to relief, "rather than a blanket assertion" of entitlement to relief.  Id. at 1965 n. 3.

**ALLEGED FACTS**

The facts underlying this case are lengthy, well known to the parties, and mostly unnecessary to resolve the pending motion.  In short, on July 14, 1976, Plaintiff was convicted of murder, kidnaping, and attempted rape.  The complaint alleges that Plaintiff has always maintained his factual innocence.  After California Penal Code § 1405 was enacted in 2001 Plaintiff filed a petition for post-conviction DNA testing.  As a result, four items were tested: (1) The victim's green pants; (2) The victim's underpants; (3) The victim's sanitary napkin and belt; and (4) Plaintiff's bone-handled pocket knife.  The DNA test of the victim's belongings revealed no sperm.  The testing of Plaintiff's knife revealed dried blood that could not be typed.

Subsequently, the lab stated that it had discovered in its possession 46 slides pertaining to Plaintiff's case.  Plaintiff then filed a second petition pursuant to Section 1405, in which he asked for testing of the newly discovered slides.  This petition was opposed by the California Attorney General's office, which contended that the 46 slides were only reference samples or would only provide inculpatory evidence.  Plaintiff's second petition was then denied by the California courts.

The complaint alleges that the California Attorney General's office's representations to the court concerning the 46 slides were incorrect.  The complaint alleges the representations were based on a letter from Terri Ghio at Forensic Analytical, in which she stated that the slides did not contain any semen. The complaint alleges that in a follow up letter, Ms. Ghio indicated that no DNA testing or other tests were performed on these slides.   The complaint alleges that at least 23 of the 46 slides are material, relevant evidence in Plaintiff's case and are not merely

3

reference samples.   The complaint alleges that these slides include hairs removed from Plaintiffs' clothing and vehicle, the hairs removed from the victim's clothing or body, and hairs removed from the a ski cap and rags found in the area.

The complaint alleges that Defendant A.G. Brown is responsible for supervising Defendant D.A. Cline.

## DISCUSSION

The Civil Rights Act, 42 U.S.C. § 1983, provides a cause of action against any person who, under color of state law, deprives another of any rights, privileges or immunities secured by the Constitution and laws of the United States. 42 U.S.C. § 1983.  To state a claim under 42 U.S.C. § 1983 a plaintiff must allege that the defendant was acting under color of state law and his  conduct must have deprived the plaintiff of rights, privileges or immunities secured by the constitution or laws of the United States.   Parratt v. Taylor, 451 U.S. 527, 535 (1981).   In addition, liability may be imposed on an individual defendant under 42 U.S.C. § 1983 only if the plaintiff can show that the defendant proximately caused the deprivation of a federally protected right.   Leer v. Murphy, 844 F.2d 628, 634 (9th Cir.1988); Harris v. City of Roseburg, 664 F.2d 1121, 1125 (9th Cir.1981).   "The inquiry into causation must be individualized and focus on the duties and responsibilities of each individual defendant whose acts or omissions are alleged to have caused a constitutional deprivation."  Leer, 844 F.2d at 633.   If a plaintiff fails to allege adequate causation, the complaint must be dismissed.  Marsh v. San Diego County, 432 F.Supp.2d 1035, 1045 (S.D.Cal.2006).

There is no *respondeat superior* liability under Section 1983. Jones v. Williams, 297 F.3d 930, 934 (9th Cir. 2002).   To show a supervisor's liability, the plaintiff must show (1) the supervisor's personal involvement in the constitutional deprivation, or (2) a sufficient causal connection between the supervisor's wrongful conduct and the constitutional violation.   Jeffers v. Gomez, 267 F.3d 895, 915 (9th Cir. 2001).   Supervisors can be held liable if they play an affirmative part in the alleged deprivation of constitutional rights by setting in motion a series of

acts by others which the supervisor knew or reasonably should have known would cause others to inflict the constitutional injury. Graves v. City of Coeur D'Alene, 339 F.3d 828, 848 (9th Cir. 2003) (*citations omitted*) (quoting Rise v. Oregon, 59 F.3d 1556, 1563 (9th Cir.1995)); Larez v. City of LA, 946 F.2d 630, 646 (9th Cir.1991)). "Supervisory liability is imposed against a supervisory official in his individual capacity for his own culpable action or inaction in the training, supervision, or control of his subordinates, for his acquiescence in the constitutional deprivations of which the complaint is made, or for conduct that showed a reckless or callous indifference to the rights of others." Menotti v. City of Seattle, 409 F.3d 1113, 1149 (9th Cir. 2005) (quoting Larez v. City of Los Angeles, 946 F.2d 630, 646 (9th Cir.1991)).

Defendant A.G. Brown is correct that he is entitled to dismissal based on the complaint's current allegations because Defendant A.G. Brown's liability is based only on the alleged actions of Defendant D.A. Cline and/or members of Defendant A.G. Brown's office under a theory of supervisory liability. The complaint alleges that Defendant A.G. Brown was responsible to supervise Defendant D.A. Cline. The complaint also alleges that Defendant A.G. Brown's "office" opposed Plaintiff's request for the testing of the 46 slides, and this opposition was based on the "office's" mistaken belief that the slides were only reference samples. At best, Plaintiff has alleged that Defendant A.G. Brown supervised Defendant D.A. Cline and that someone in Defendant A.G. Brown's office, whom Defendant A.G. Brown apparently also supervised, improperly sought to oppose the second request. Based on these minimal contentions, the complaint fails to state a cause of action against Defendant A.G. Brown. Plaintiff has failed to allege that Defendant A.G. Brown **personally** knew about Plaintiff's requests and what the slides contained, that Defendant A.G. Brown's policy or practice caused Defendant D.A. Cline or members of Defendant A.G. Brown's office to wrongly oppose Plaintiff's requests, or that Defendant A.G. Brown in any way set in motion a series of events that resulted in a denial of Plaintiff's constitutional rights. Thus, the complaint's current allegations do not state a civil rights cause of action against Defendant A.G. Brown.

In the opposition, Plaintiff argues that Defendant A.G. Brown is a proper Defendant to this action based on California Penal Code § 1405.  Section 1405(a) provides as follows:

> A person who was convicted of a felony and is currently serving a term of imprisonment may make a written motion before the trial court that entered the judgment of conviction in his or her case, for performance of forensic deoxyribonucleic acid (DNA) testing.

Cal. Penal Code § 1405(a).  California Penal Code § 1405(c)(2) provides that notice of the motion shall be served on the Attorney General, the district attorney in the county of conviction, and, if known, the governmental agency or laboratory holding the evidence sought to be tested. Cal. Penal Code § 1405(c)(2).  If the trial court orders testing, the results shall be fully disclosed to the person filing the motion, the district attorney and the Attorney General.  Cal. Penal Code § 1405(d).  Based on Section 1405's express terms, Plaintiff argues that the Attorney General is a proper Defendant to a civil rights action concerning the denial of testing pursuant to Section 1405.

This entire action is based on the new Ninth Circuit case of <u>Osborne v. District Attorney's Office</u>, 521 F.3d 1118 (9th Cir. 2008), for which the Supreme Court granted certiorari on November 3, 2008.  <u>See</u> <u>District Attorney's Office v. Osborne</u>, 129 S.Ct. 488 (2008).  In <u>Osborn</u>, the Ninth Circuit found that under the facts of <u>Osborne</u>, the plaintiff could bring an action under 42 U.S.C. §1983 based on his due process right to post-conviction access to potentially exculpatory DNA evidence.  <u>Osborne</u>,  521 F.3d at 1122 & 1132.  In setting the standard for requiring DNA evidence to be turned over post-conviction, the Ninth Circuit found as follows:

> [W]e hold that the standard of materiality applicable to Osborne's claim for post-conviction access to evidence is no higher than a reasonable probability that, if exculpatory DNA evidence were disclosed to Osborne, he could prevail in an action for post-conviction relief. Taking into account Osborne's declared intention to file a freestanding claim of actual innocence, materiality would be established by a reasonable probability that Osborne could "affirmatively prove that he is probably innocent." *Carriger*, 132 F.3d at 476. And to paraphrase the Supreme Court's definition of "reasonable probability," this materiality standard does not require a demonstration by a preponderance that disclosure of the DNA evidence will ultimately enable Osborne to prove his innocence. *See Kyles*, 514 U.S. at 434,

>115 S.Ct. 1555. The question is not whether Osborne would more likely than not be granted habeas relief with the evidence, but whether in the absence of the DNA evidence Osborne would receive a fair habeas hearing, understood as a hearing resulting in a judgment "worthy of confidence." *Id*.

Osborne, 521 F.3d at 1134.   However, the Ninth Circuit concluded its analysis by holding it did not purport to set the standards by which all future cases must be judged, and that the court's holding was only addressed to the circumstances before it that presented a meritorious case for disclosure.   Id. at 1142.

The defendants in Osborne were the Anchorage District Attorney's Office, then-District Attorney Susan Parkes, the Anchorage Police Department, and then-Chief of Police Walt Monegan.  Osborne 521 F.3d at1126.  However, who the proper defendant should be for such a due process claim was not clarified by the Ninth Circuit in Osborne nor has it been addressed in those few cases that have followed.   The Ninth Circuit's reasoning in Osborne was based on the government's duty to turn over evidence in its possession that is favorable to a criminal defendant both before and after trial.  Id. at 1128-30.   The Ninth Circuit in dicta mentioned that the evidence in question in Osborne could be produced by the State of Alaska.  See id. at 1142. Based on the Ninth Circuit's reasoning in Osborne it would appear the proper defendant to a due process claim based on the right to post-conviction DNA testing would be the individuals with the power to produce the relevant evidence.   Pursuant to California Penal Code Section 1405 the California Attorney General may very well be one of these individuals, making him a proper Defendant pursuant to the duties set forth in Section 1405.   However, this question can be answered at some future time.   The complaint does not allege that Defendant A.G. Brown is connected to the denial of Plaintiff's constitutional rights based on Defendant A.G. Brown's responsibilities under Section 1405.   Rather, the complaint currently premises Defendant A.G. Brown's liability on his status as a supervisor and not any duty and/or ability he may have to produce evidence for testing pursuant to Section 1405.   Thus, based on the complaint's current allegations, Defendant A.G. Brown is entitled to dismissal.

7

**ORDER**

Accordingly, the court ORDERS that:

1. Defendant Brown's motion to dismiss is GRANTED;
2. Defendant Brown is DISMISSED from this action with leave to amend; and
3. Any amended complaint may be filed within thirty days of this order's date of service.

IT IS SO ORDERED.

**Dated:   February 3, 2009**                                    **/s/ Anthony W. Ishii**
                                                                            CHIEF UNITED STATES DISTRICT JUDGE