IN THE UNITED STATES DISTRICT COURT FOR THE

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| OSCAR A. CLIFTON,<br><br>      **Plaintiff**,<br>   v.<br><br>**PHILLIP J. CLINE, District Attorney for the County of Tulare,**<br><br>      **Defendant**. | 1: 08-CV- 0193 AWI SMS<br><br>**ORDER GRANTING MOTION TO DISMISS COMPLAINT AND DISMISSING ACTION WITHOUT PREJUDICE**<br><br>(Document #40) |

This civil rights action is brought by Plaintiff Oscar A. Clifton pursuant to 42 U.S.C. § 1983. Plaintiff contends that he is entitled to post-conviction DNA testing. This court has jurisdiction over this action pursuant to 28 U.S.C. § 1331.

**BACKGROUND**

On June 26, 2008, Plaintiff filed an amended complaint ("complaint"). The complaint names Phillip J. Cline, District Attorney for the County of Tulare ("Defendant D.A. Cline"), and Edmund G. Brown, Jr., Attorney General for the State of California ("Defendant A.G. Brown"), as Defendants. Plaintiff contends that he has the right to post-conviction DNA testing of evidence from Plaintiff's criminal case which is still in existence and a right to an accounting of all remaining evidence.

On October 14, 2008, Defendant A.G. Brown filed a motion to dismiss. Defendant A.G. Brown contended that he must be dismissed because he is only named in the complaint in his capacity as the District Attorney of Tulare County's supervisor. On February 4, 2009, the court granted Defendant Brown's motion to dismiss with leave to amend within thirty days. Plaintiff

did not file an amended complaint. Thus, this action proceeds against Defendant D.A. Cline only.

On July 17, 2009, Defendant D.A. Cline filed a motion to dismiss. Defendant D.A. Cline contends that in <u>District Attorney's Office for Third Judicial Dist v. Osborne</u>, 129 S.Ct. 2308 (2009), the Supreme Court found that a convicted person, like Plaintiff, does not have a due process right to obtain post-conviction access to the state's evidence because the evidence is available through state procedures that comport with due process.

On August 14, 2009, Plaintiff filed an opposition to Defendant D.A. Cline's motion to dismiss. Plaintiff contends that he has a liberty interest in proving his innocence and Defendant D.A. Cline denied him due process by making false representations about the evidence.

On August 26, 2009, Defendant D.A. Cline filed a reply brief.

**LEGAL STANDARD**

Under Federal Rule of Civil Procedure 12(b)(6), a claim may be dismissed because of the plaintiff's "failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). A dismissal under Rule 12(b)(6) may be based on the lack of a cognizable legal theory or on the absence of sufficient facts alleged under a cognizable legal theory. <u>Johnson v. Riverside Healthcare Sys.</u>, 534 F.3d 1116, 1121 (9th Cir. 2008); <u>Navarro v. Block</u>, 250 F.3d 729, 732 (9th Cir. 2001). In reviewing a complaint under Rule 12(b)(6), all of the complaint's material allegations of fact are taken as true, and the facts are construed in the light most favorable to the non-moving party. <u>Marceau v. Balckfeet Hous. Auth.</u>, 540 F.3d 916, 919 (9th Cir. 2008); <u>Vignolo v. Miller</u>, 120 F.3d 1075, 1077 (9th Cir. 1999). The court must also assume that general allegations embrace the necessary, specific facts to support the claim. <u>Smith v. Pacific Prop. and Dev. Corp.</u>, 358 F.3d 1097, 1106 (9th Cir. 2004). However, the court is not required "to accept as true allegations that are merely conclusory, unwarranted deductions of fact, or unreasonable inferences." <u>In re Gilead Scis. Sec. Litig.</u>, 536 F.3d 1049, 1056-57 (9th Cir. 2008); <u>Sprewell v. Golden State Warriors</u>, 266 F.3d 979, 988 (9th Cir. 2001). Although they may provide the

framework of a complaint, legal conclusions are not accepted as true and "[t]hreadbare recitals of elements of a cause of action, supported by mere conclusory statements, do not suffice." Ashcroft v. Iqbal, 129 S.Ct. 1937, 1949-50 (2009); see also Warren v. Fox Family Worldwide, Inc., 328 F.3d 1136, 1139 (9th Cir. 2003).  As the Supreme Court has recently explained:

> While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff's obligation to provide the 'grounds' of his 'entitlement to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do. Factual allegations must be enough to raise a right to relief above the speculative level, on the assumption that all the allegations in the complaint are true (even if doubtful in fact).

Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007).  Thus, "a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." Iqbal, 129 S.Ct. at 1949.  "A claim has facial plausibility when the plaintiff pleads factual content that allows the court draw the reasonable inference that the defendant is liable for the misconduct alleged." Iqbal, 129 S.Ct. at 1949.

> The plausibility standard is not akin to a 'probability requirement,' but it asks more than a sheer possibility that a defendant has acted unlawfully.  Where a complaint pleads facts that are 'merely consistent with' a defendant's liability, it stops short of the line between possibility and plausibility of 'entitlement to relief.'
> . . .
> Determining whether a complaint states a plausible claim for relief will . . . be a context specific task that requires the reviewing court to draw on its judicial experience and common sense.  But where the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged – but it has not shown – that the pleader is entitled to relief.

Iqbal, 129 S.Ct. at 1949-50.  "In sum, for a complaint to survive a motion to dismiss, the non-conclusory 'factual content,' and reasonable inferences from that content, must be plausibly suggestive of a claim entitling the plaintiff to relief." Moss v. United States Secret Service, 572 F.3d 962, 969 (9th Cir. 2009).

3

## ALLEGED FACTS

The facts underlying this case are lengthy, well known to the parties, and mostly unnecessary to resolve the pending motion. In short, on July 14, 1976, Plaintiff was convicted of murder, kidnaping, and attempted rape. The complaint alleges that Plaintiff has always maintained his factual innocence. After California Penal Code § 1405 was enacted in 2001 Plaintiff filed a petition for post-conviction DNA testing in the Tulare County Superior Court. As a result, four items were tested: (1) The victim's green pants; (2) The victim's underpants; (3) The victim's sanitary napkin and belt; and (4) Plaintiff's bone-handled pocket knife. The DNA test of the victim's belongings revealed no sperm. The testing of Plaintiff's knife revealed dried blood that could not be typed.

Subsequently, the lab stated that it had discovered in its possession 46 slides pertaining to Plaintiff's case. Plaintiff then filed a second petition pursuant to Section 1405, in which he asked for testing of the newly discovered slides. This petition was opposed by the California Attorney General's office, which contended that the 46 slides were only reference samples or would only provide inculpatory evidence. Plaintiff's second petition was then denied by the California courts.

The complaint alleges that the California Attorney General's office's representations to the court concerning the 46 slides were incorrect. The complaint alleges that the representations were based on a letter from Terri Ghio at Forensic Analytical, in which she stated that the slides did not contain any semen. The complaint alleges that in a follow up letter, Ms. Ghio indicated that no DNA testing or other tests were performed on these slides. The complaint alleges that it would have been impossible for Ms. Ghio to know at the time of her 2003 letter whether the public hair slides or any hair slides contained semen because they had not been tested. The complaint alleges that at least 23 of the 46 slides are material, relevant evidence in Plaintiff's case and are not merely reference samples. The complaint alleges that these slides include hairs removed from Plaintiffs' clothing and vehicle, hairs removed from the victim's clothing or body,

4

and hairs removed from the a ski cap and rags found in the area.

## DISCUSSION

The Civil Rights Act, 42 U.S.C. § 1983, provides a cause of action against any person who, under color of state law, deprives another of any rights, privileges or immunities secured by the Constitution and laws of the United States. 42 U.S.C. § 1983. To state a claim under 42 U.S.C. § 1983 a plaintiff must allege that the defendant was acting under color of state law and his conduct must have deprived the plaintiff of rights, privileges or immunities secured by the constitution or laws of the United States. Parratt v. Taylor, 451 U.S. 527, 535 (1981).

Since this court's last opinion,[1] the Supreme Court decided District Attorney's Office for the Third Judicial District v. Osborne, 129 S.Ct. 2308 (2009). In Osborne, the plaintiff filed an action pursuant to 42 U.S.C. § 1983 to obtain biological evidence concerning his criminal case so that DNA testing could be performed. Osborne, 129 S.Ct. at 2315. The plaintiff claimed that he had a right to the evidence under the Federal Constitution's Substantive Due Process Clause and a procedural due process right arising from an Alaskan state statute that provided for post-conviction access to evidence. Id. In addressing the claims before it, the Supreme Court expressly rejected the concept that post-conviction defendants have a substantive or procedural due process right to post-conviction DNA testing. Id. at 2322. However, the Supreme Court found that if a state enacts a statute allowing post-conviction defendants access to evidence, the

---

[1] This entire action was filed pursuant to the Ninth Circuit case of Osborne v. District Attorney's Office, 521 F.3d 1118 (9th Cir. 2008), which this court relied on when addressing the prior motion to dismiss. In Osborn, the Ninth Circuit found that under the facts of Osborne, the plaintiff could bring an action under 42 U.S.C. §1983 based on his due process right to post-conviction access to potentially exculpatory DNA evidence. Osborne, 521 F.3d at 1122 & 1132. In setting the standard for requiring DNA evidence to be turned over post-conviction, the Ninth Circuit found that a plaintiff, such as Osborne, must show a reasonable probability that, if exculpatory DNA evidence were disclosed, he could prevail in an action for post-conviction relief. Id. at 1134. The Ninth Circuit stated this standard "does not require a demonstration by a preponderance that disclosure of the DNA evidence will ultimately enable Osborne to prove his innocence"; the question is "whether in the absence of the DNA evidence Osborne would receive a fair habeas hearing, understood as a hearing resulting in a judgment 'worthy of confidence.'" Osborne, 521 F.3d at 1134. The Ninth Circuit's opinion in Osborne has been reversed and remanded. See District Attorney's Office for the Third Judicial District v. Osborne, 129 S.Ct. 2308 (2009).

state has created a liberty interest that is entitled to due process protection. Id. at 2319-20.  The Due Process Clause does not dictate the exact form of assistance a statute must give those seeking relief from convictions by DNA testing. Id. at 2320. The question for the court is whether consideration of the plaintiff's "claim within the framework of the State's procedures for post-conviction relief 'offends some principle of justice so rooted in the traditions and conscience of our people as to be ranked as fundamental,' or 'transgresses any recognized principle of fundamental fairness in operation.'" Id. at 2320 (quoting Medina v. California, 505 U.S. 437, 446, 448 (1992)).[2] "Federal courts may upset a State's post-conviction relief procedures only if they are fundamentally inadequate to vindicate the substantive rights provided." Osborne, 129 S.Ct. at 2320.

Reviewing the Alaska statute, the Supreme Court saw nothing inadequate about the procedures Alaska has provided to provide post-conviction relief either in general or in how the procedures applied to plaintiffs seeking access to DNA evidence. Osborne, 129 S.Ct. at 2320. The Supreme Court, however, expressly noted that its ability to evaluate Alaska's procedures was limited because the plaintiff had never pursued those procedures to test their adequacy. Id. at 2321. The Supreme Court determined that it was the plaintiff's burden to demonstrate the inadequacy of the state law procedures available to him, and without trying the procedures, the plaintiff could "hardly complain that they do not work in practice." Id.

In light of Osborne, the court concludes that California Penal Code § 1405 confers a liberty interest to a convicted person to be able to access evidence in the state's possession for the purpose of DNA testing *if* there is a reasonable probability that if the DNA testing's results had

---

[2] Plaintiff contends that this is an improper standard to apply to California Penal Code § 1405 because unlike Osborne and Medina, Section 1405 is not a post-conviction remedy.  As such, Plaintiff contends that the due process test should come from Mathews v. Eldridge, 424 U.S. 319 (1976), not Medina.  Plaintiff's contention has been foreclosed by Jackson v. Clarke, 2009 WL 2222592 (9th Cri. 2009), in which the Ninth Circuit found that after Osborne, to state a due process claim, a plaintiff "must allege that he has a substantive right to postconviction relief under state law, and that the state's postconviction relief procedures 'are fundamentally inadequate to vindicate' that right"   Jackson, 2009 WL 2222592 at *1 (quoting Osborn, 129 S.Ct. at 2320)

been available at the time of conviction, the convicted person's verdict would have been more favorable.   California Penal Code § 1405 provides in pertinent part:

> (a) A person who was convicted of a felony and is currently serving a term of imprisonment may make a written motion before the trial court that entered the judgment of conviction in his or her case, for performance of forensic deoxyribonucleic acid (DNA) testing.
> . . . .
>
> (c)(1) The motion shall be verified by the convicted person under penalty of perjury and shall do all of the following:
>
> (A) Explain why the identity of the perpetrator was, or should have been, a significant issue in the case.
>
> (B) Explain, in light of all the evidence, how the requested DNA testing would raise a reasonable probability that the convicted person's verdict or sentence would be more favorable if the results of DNA testing had been available at the time of conviction.
>
> (C) Make every reasonable attempt to identify both the evidence that should be tested and the specific type of DNA testing sought.
>
> (D) Reveal the results of any DNA or other biological testing that was conducted previously by either the prosecution or defense, if known.
>
> (E) State whether any motion for testing under this section previously has been filed and the results of that motion, if known.
>
> (2) Notice of the motion shall be served on the Attorney General, the district attorney in the county of conviction, and, if known, the governmental agency or laboratory holding the evidence sought to be tested. Responses, if any, shall be filed within 60 days of the date on which the Attorney General and the district attorney are served with the motion, unless a continuance is granted for good cause.
>
> (f) The court shall grant the motion for DNA testing if it determines all of the following have been established:
>
> (1) The evidence to be tested is available and in a condition that would permit the DNA testing requested in the motion.
>
> (2) The evidence to be tested has been subject to a chain of custody sufficient to establish it has not been substituted, tampered with, replaced or altered in any material aspect.
>
> (3) The identity of the perpetrator of the crime was, or should have been, a significant issue in the case.
>
> (4) The convicted person has made a prima facie showing that the evidence sought to be tested is material to the issue of the convicted person's identity as the

perpetrator of, or accomplice to, the crime, special circumstance, or enhancement allegation that resulted in the conviction or sentence.

(5) The requested DNA testing results would raise a reasonable probability that, in light of all the evidence, the convicted person's verdict or sentence would have been more favorable if the results of DNA testing had been available at the time of conviction. The court in its discretion may consider any evidence whether or not it was introduced at trial.

(6) The evidence sought to be tested meets either of the following conditions:

(A) The evidence was not tested previously.

(B) The evidence was tested previously, but the requested DNA test would provide results that are reasonably more discriminating and probative of the identity of the perpetrator or accomplice or have a reasonable probability of contradicting prior test results.

(7) The testing requested employs a method generally accepted within the relevant scientific community.

(8) The motion is not made solely for the purpose of delay.

(g)(1) If the court grants the motion for DNA testing, the court order shall identify the specific evidence to be tested and the DNA technology to be used.

(2) The testing shall be conducted by a laboratory mutually agreed upon by the district attorney in a noncapital case, or the Attorney General in a capital case, and the person filing the motion. If the parties cannot agree, the court shall designate the laboratory to conduct the testing and shall consider designating a laboratory accredited by the American Society of Crime Laboratory Directors Laboratory Accreditation Board (ASCLD/LAB).

. . . .

(j) An order granting or denying a motion for DNA testing under this section shall not be appealable, and shall be subject to review only through petition for writ of mandate or prohibition filed by the person seeking DNA testing, the district attorney, or the Attorney General. The petition shall be filed within 20 days after the court's order granting or denying the motion for DNA testing. In a noncapital case, the petition for writ of mandate or prohibition shall be filed in the court of appeal. In a capital case, the petition shall be filed in the California Supreme Court. The court of appeal or California Supreme Court shall expedite its review of a petition for writ of mandate or prohibition filed under this subdivision.

(k) DNA testing ordered by the court pursuant to this section shall be done as soon as practicable. However, if the court finds that a miscarriage of justice will otherwise occur and that it is necessary in the interests of justice to give priority to the DNA testing, a DNA laboratory shall be required to give priority to the DNA testing ordered pursuant to this section over the laboratory's other pending casework.

. . . .

> (m) Notwithstanding any other provision of law, the right to file a motion for post-conviction DNA testing provided by this section is absolute and shall not be waived. This prohibition applies to, but is not limited to, a waiver that is given as part of an agreement resulting in a plea of guilty or nolo contendre.

Cal. Penal Code § 1405.

As in Osborne, California's procedures for obtaining access to evidence for DNA testing, on their face, appear to comport with recognized principles of fundamental fairness. In Osborne, the Supreme Court found no fault with the procedural due process used by Alaska to decide when convicted criminals may obtain post-conviction DNA testing. See Osborne, 129 S.Ct. at 2320-21. While granting testing under California law is not automatic, Alaska's procedures appear to require similar hurdles and potentially even more difficult hurdles than those in California. The procedures found constitutional in Osborne afforded post-conviction DNA testing only if the evidence was "newly available . . . diligently pursued, and . . . sufficiently material." Id. at 2320. While California requires that the requested DNA results would raise a reasonable probability that the verdict would have been more favorable if the results of DNA testing had been available at the time of trial and requires either no previous DNA testing or new testing that is more discriminating and probative than any prior testing, California law does not inquire into whether Plaintiff's request for DNA testing was "newly available" or "diligently pursued." See Cal. Penal Code § 1405.

At issue in this action is the Tulare County Superior Court's denial of Plaintiff's second request for testing on June 23, 2004. While a copy of this decision has not been provided, it appears that the request was denied because Plaintiff had not shown a reasonable probability that, in light of all the evidence, Plaintiff's verdict would have been more favorable if the results of DNA testing from the 46 slides had been available at the time of conviction. See Cal. Penal Code § 1405(f)(5). Pursuant to the complaint, Plaintiff's second request for testing was denied because the Attorney General's Office's opposition was based on the "mistaken belief or representation that these slides consisted entirely of reference samples, hairs that did not contain

the perpetrator's semen, or could reveal only inculpatory evidence." See Complaint ¶ 46. The complaint alleges that the Attorney General's representations have been shown to be misleading because of a 2007 letter written by Terri Ghio. Ms. Ghio in 2007 stated that no DNA testing or any other tests were ever performed on the 46 slides. See Complaint ¶ 47. The complaint then concludes that it would have been impossible for Ms. Ghio or the Attorney General's Office to know at the time of their 2003 representations whether the pubic hair slide or any hair slides contained semen because they were never tested in any way.

The court agrees that at the time of the June 23, 2004 denial, Plaintiff had not shown the verdict would have been more favorable to him had the DNA tests of the 46 slides been admitted into evidence. Thus, Plaintiff's due process rights were not violated by either the statute or Superior Court's finding the statute did not require additional testing.

Plaintiff contends that when the second petition was filed, the Superior Court was given mis-information about what testing had already been done on the 46 slides. However, this information became known in 2007. This information has never been presented to the Superior Court. This situation is similar to that facing the Supreme Court in Osborne. In Osborne, the plaintiff had never presented his claim to the Alaska courts, and the Supreme Court noted that "[i]t is difficult to criticize the State's procedures when Osborne has not invoked them." See Osborne, 129 S.Ct. 2321. Plaintiff in this action has the burden to demonstrate the inadequacy of California's statute and procedures. See id. Because the procedures are adequate on their face, the court declines to find that they are inadequate in practice when Plaintiff has not yet presented the Superior Court with all evidence and arguments he believes show why testing is appropriate.

Based on the allegations in the complaint, Plaintiff has failed to show that California's procedure for post-conviction DNA testing violates his procedural due process rights. Because the California courts have not been made aware of all arguments presented to this court and the discovery of new evidence and facts in this case appears to be an on-going process, the court will dismiss Plaintiff's action without prejudice.

**ORDER**

Accordingly, the court ORDERS that:

1. Defendant's motion to dismiss is GRANTED;
2. This action is DISMISSED without prejudice; and
3. The Clerk of the Court is DIRECTED to close this action.

IT IS SO ORDERED.

**Dated:** **October 23, 2009**            **/s/ Anthony W. Ishii**
                                                        CHIEF UNITED STATES DISTRICT JUDGE